

FILED SEP 24 2008 CLERK, U.S. DISTRICT COURT RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**SHERMAN L. SHELTON, JR.,**

    Petitioner,

v.                                                              Civil Action No. **3:08cv70**

**DIRECTOR OF VIRGINIA DEPARTMENT
OF CORRECTIONS,**

    Respondent.

## MEMORANDUM OPINION

Sherman L. Shelton, Jr. ("Petitioner"), proceeding *pro se*, filed this 28 U.S.C. § 2254 petition, challenging his convictions in the Circuit Court for the County of Spotsylvania ("Circuit Court") for robbery and threatening to burn or bomb a building. Respondent filed his response and Petitioner has filed a reply to that response.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 14, 2004, a man robbed a Branch Bank and Trust ("BB&T") in Spotsylvania County, Virginia by handing teller Alyssa Meier a written bomb threat. The robber escaped with approximately $1,500 in currency; however, a dye pack hidden in the money burst as he left the bank. Police recovered a dye-covered shirt nearby about half an hour later that matched witness descriptions. (April 26, 2005 Hr'g Tr. 63.) Spotsylvania County Detective Troy Skebo had the shirt tested for DNA. On the morning of July 1, 2004, a lab technician phoned Detective Skebo to inform him that Petitioner's DNA was a "positive match" with DNA found on the shirt.[1]

Prior to July 1, 2004, Petitioner was already under suspicion for the robbery because his appearance was consistent with eyewitness descriptions and security video. Moreover, the

---

[1] Police obtained a DNA sample from Petitioner during a prior arrest.

Richmond City Police Department suspected that Petitioner had committed a similar bank robbery in Richmond, and had placed him under surveillance.[2] (Apr. 6, 2005 Hr'g Tr. 66-69.) Detective Skebo therefore called Richmond police shortly after learning the DNA test results, and discovered that a surveillance team was currently following Petitioner on I-95. Rather than requesting the surveillance car detain him, Detective Skebo had his dispatcher issue a "be on the lookout" broadcast for the car Petitioner was driving. (April 6, 2005 Hr'g Tr. 52.) Uniformed Richmond Police officers soon intitiated a traffic stop. Petitioner made a sudden U-turn after Officer Bethany Roberts turned on her siren, but pulled over shortly thereafter. (Apr. 6, 2005 Hr'g Tr. 53.) Detective Skebo arrived on the scene and arrested Petitioner without a warrant. (Apr. 6, 2005 Hr'g Tr. 72-73.)

On August 16, 2004, a grand jury in Spotsylvania County indicted Petitioner on one count of robbery and one count of threatening to bomb or burn a building. At the preliminary hearing, Ms. Meier and another bank teller, Nicole Seal, identified Petitioner as the man who robbed the BB&T bank. (Fed. Hab. Pet. 20.) At Petitioner's request, the trial date was continued on several occasions. On March 3, 2005, the Circuit Court granted Petitioner's motion to proceed *pro se*, but kept the court-appointed public defender, Gray Collins, as standby counsel. The Circuit Court thereafter denied a motion to remove Mr. Collins as standby counsel. (March 17, 2005 Hr'g Tr. 3.)

---

[2] Petitioner later pleaded guilty in this Court to committing that bank robbery, as well as a bank robbery in Fredericksburg, Virginia. *See United States v. Shelton*, 3:05cr215 (E.D. Va. 2005). On May 14, 2008, Petitioner acknowledged that he had inadvertently omitted these federal convictions from his § 2254 petition and filed a motion to amend one of his responses on his federal habeas petition to reflect the federal convictions. Petitioner's motion to amend (Docket No. 14) will be GRANTED.

In March of 2005, Petitioner filed a motion in limine to exclude Ms. Meier's and Ms. Seal's identification testimony. He also filed a motion to suppress all evidence obtained as a result of the warrantless arrest. These motions were noticed for hearing on April 6, 2005. Ms. Meier and Ms. Seal, however, were not subpoenaed, and did not attend the hearing. (Apr. 6, 2005 Hr'g Tr. 8-9.) The judge therefore declined to hear the motion *in limine*, explaining that he could not determine whether their identifications should be excluded without hearing their testimony. The judge also refused to continue the hearing until the day of trial. Nevertheless, the judge stated that he would entertain a motion to exclude their testimony at trial if the basis for their identifications proved unreliable. (Apr. 6, 2005 Hr'g Tr. Vol. 2 at 4.) The judge denied Petitioner's motion to suppress, finding that the police had probable cause for Petitioner's warrantless arrest. (Apr. 6, 2005 Hr'g Tr. 106-110.)

Petitioner retained new counsel the week before the trial date. (Apr. 26, 2005 Hr'g Tr. 3-8.) On April 26, 2005, the day of the trial, Petitioner declined to proceed with the jury trial and, pursuant to a conditional *Alford* plea,[3] pleaded guilty to robbery and to threatening to bomb or burn a building.[4] (Apr. 26, 2005 Hr'g Tr. 50.) On November 14, 2005, Petitioner was sentenced to a 64-year term of imprisonment, with 56 years and six months suspended. Petitioner appealed to the Court of Appeals of Virginia, which denied his appeal, but he did not appeal that decision to the Supreme Court of Virginia.

---

[3] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[4] Petitioner's Alford plea was conditioned on Petitioner being permitted to appeal the Circuit Court's ruling that the police had probable cause to arrest Petitioner without a warrant under the Fourth Amendment, and that the DNA evidence was admissible.

3

Thereafter, Petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, which was dismissed on August 31, 2007. *Shelton v. Dir. of the Dep't of Corr.*, Rec. No. 070610, at 3 (Va. Aug 31, 2007) (hereinafter "*State Hab. Op.*").

## II. GROUNDS FOR FEDERAL HABEAS RELIEF

On January 24, 2008, Petitioner filed this federal habeas petition raising the following claims for relief:

Claim 1[5]: Petitioner's right to due process under the Fourteenth Amendment[6] was violated by:
    (A) the prosecution's unnecessarily suggestive identification procedure prior to Ms. Meier's testimony at the preliminary hearing; and
    (B) Ms. Meier's unreliable identification of Petitioner.

Claim 2: Petitioner's Fourth Amendment[7] rights were violated when he was illegally seized without reasonable suspicion, and subjected to a warrantless arrest without probable cause.

Claim 3: Standby counsel was ineffective when he:
    (A) failed to subpoena for the April 6, 2005 pre-trial hearing on Petitioner's motion in limine:
        (i) Alyssa Meier, and
        (ii) Nicole Seal; and
    (B) failed to arrange for the DNA defense expert to be present on the day of the trial.

Claim 4: Appellate counsel was ineffective for failing to argue:

---

[5] Petitioner's claims have been renumbered for analytical clarity.

[6] "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

[7] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

    (A)    Petitioner's Fourteenth Amendment right to due process was violated when the prosecution used an unnecessarily suggestive identification procedure at the preliminary hearing; and
    (B)    Petitioner's Fourth Amendment rights were violated when he was illegally seized without reasonable suspicion, and subject to a warrantless arrest without probable cause.

(Fed. Hab. Pet. 10, 17, 20-22, 24-27.) As explained below, Claims 1, 2, 3(A)(ii), and 3(B) are procedurally defaulted, and Petitioner's remaining claims lack merit.

### III. EXHAUSTION AND PROCEDURAL DEFAULT

"In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997)). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." *Matthews*, 105 F.3d at 911 (*citing Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court is precluded from reviewing the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Supreme Court of Virginia found Claims 1 and 2 barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because they could have been, but were not, raised on direct appeal to the Supreme Court of Virginia. *State Hab. Op.* at 3. *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Claims 1 and 2 are therefore procedurally defaulted.

Claims 3(A)(ii) and 3(B) are not exhausted because Petitioner did not fairly present them to the Supreme Court of Virginia. In the ineffective assistance of standby counsel section of his state habeas petition (State Hab. Pet. 19), Petitioner did not argue that standby counsel was ineffective for failing to subpoena Ms. Seal or for failing to arrange for a DNA expert's presence on the day of trial.[8] If Petitioner were to file a second habeas petition in order to exhaust these claims, the Supreme Court of Virginia would find them procedurally barred under § 8.01-654(B)(2) of the Virginia Code because the underlying facts were available when he filed his first petition. Section 8.01-654(B)(2) is an adequate and independent state ground precluding federal review. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996). Accordingly, Claims 3(A)(ii) and 3(B) are unexhausted and procedurally defaulted.

---

[8] Petitioner claimed that Ms. Seal's unreliable testimony would violate his Fourteenth Amendment due process rights, not his right to the effective assistance of counsel. Moreover, Petitioner never identified the DNA defense expert as a witness whom counsel failed to subpoena.

Petitioner argues that the Court should excuse his procedural default because he is actually innocent.[9] "Claims of actual innocence [] presented . . . as gateways to excuse a procedural default, *see Schlup v. Delo*, 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The Supreme Court has explained that a claim of actual innocence must be supported with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. If a petitioner meets this burden, the Court must then evaluate "petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 328 (internal quotations omitted). Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *see also O'Dell v. Netherland*, 95 F.3d 1214, 1249-50 (4th Cir. 1996) (en banc).

Petitioner offers his sworn assertions that he is innocent, that an alibi witness exists, and that security tapes would show that he was at Henrico County Hospital during the robbery. (Response to August 18, 2008 Show Cause Order ¶¶ 43-48.) Petitioner's profession of innocence is not the sort of new, reliable evidence described by the Supreme Court. *See Schlup*, 513 U.S. at 324; *House v. Bell*, 547 U.S. 518, 540-54 (2006). Moreover, he has failed to produce

---

[9] Contrary to Petitioner's suggestion, fundamental unfairness in his proceedings would not entitle him to review of his defaulted claims. *United States v. Olano*, 507 U.S. 725, 736 (1993) (*citing Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992)).

eyewitness affidavits, and has not even attempted to obtain the allegedly exculpatory security tapes. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (concluding that mere allegations that exculpatory evidence exists are insufficient to raise colorable claim). Petitioner has failed to support his claim of actual innocence with new, reliable evidence. Accordingly, his claim must be rejected.

Petitioner also asserts that appellate counsel's failure to raise Claims 1 and 2 on appeal is cause to excuse their default. For the reasons set forth below in conjunction with the dismissal of Claims 4(A) and (B), Petitioner's ineffective assistance of appellate counsel claims are rejected. Accordingly, Claims 1, 2, 3(A)(ii), and 3(B) are procedurally defaulted and will be DISMISSED.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate the ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient, and that the deficient performance prejudiced the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Satisfying the deficient performance element of *Strickland* requires the petitioner to overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to satisfy either the prejudice or deficiency element, the Court is not obliged to address the other element. *Id.* at 697, 700. In the context of a guilty plea, *Strickland* requires a showing that Petitioner

would have gone to trial but for counsel's unprofessional errors. *United States v. Mooney*, 497 F.3d 397, 401 (4th Cir. 2007) (*citing Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### A. Ineffective Assistance of Trial Counsel – Claim 3(A)(i)

Petitioner claims that standby trial counsel was constitutionally ineffective because he failed to subpoena Ms. Meier for the April 6, 2005 hearing on his motions *in limine*. He reasons that, if Ms. Meier had been present, the Circuit Court would have held a hearing on his motion to exclude her testimony and granted it. This would have placed him in a position to win at trial. As explained below, Petitioner's claim is without merit because he has not demonstrated that Ms. Meier's testimony was excludable.

Courts undertake a two-step analysis to determine whether identification testimony is admissible. *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997). At step one, courts determine whether the identification procedure is impermissibly suggestive. *Id.* (*citing Manson v. Brathwaite*, 432 U.S. 98, 110 (1977); *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972)). The United States Court of Appeals for the Fourth Circuit has explained that a procedure is unnecessarily suggestive "if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *Id.* (citation omitted). At step two, courts determine whether the identification is "nevertheless reliable under the totality of the circumstances." *Id.* (*citing Manson*, 432 U.S. at 100; *Biggers*, 409 U.S. at 198). Relevant factors include, but are not limited to:

> (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time; (3) the accuracy of the witness's initial description of the suspect; (4) the witness's level of certainty in making the identification; and (5) the length of time between the crime and the identification.

*United States v. Saunders*, 501 F.3d 384, 391-92 (4th Cir. 2007) (citations omitted), *cert denied*, 128 S. Ct. 1107 (2008).

Petitioner argues that his rights were violated when the prosecutor showed Ms. Meier a photograph of him immediately before the preliminary hearing. Assuming *arguendo* that the identification procedure was unduly suggestive, Ms. Meier's testimony is nevertheless reliable.[10] The first and second factors favor the admission of the evidence. As the victim, she unquestionably had an opportunity to observe the robber closely, and her attention was undivided. *See id.* at 392; *see also United States v. Gamble*, No. 07-4290, 2008 WL 3850776, at *1 (4th Cir. Aug. 18, 2008) (per curiam) (unpublished) (where bank manager viewed photograph of defendant and video of capture before in-court identification, testimony was not unreliable because he had sufficient opportunity to identify defendant during robbery). The third factor also weighs against Petitioner. While Ms. Meier understated Petitioner's height by three inches, she accurately described his race, build, and the shirt on which his DNA was found. Under the fourth factor, Ms. Meier has testified that, on the day Petitioner pleaded guilty after jury selection, she was absolutely certain that he had committed the robbery. Moreover, she testified that she had been absolutely certain that petitioner was the robber at the preliminary hearing, and at all of Petitioner's earlier trial dates. (October 4, 2005 Hr'g Tr. 79.) The presence of these factors, coupled with the other strong evidence of Petitioner's guilt, *see Saunders*, 501 F.3d at 393, renders her testimony admissible. Petitioner therefore cannot show a reasonable probability that

---

[10] Petitioner attached an uncertified copy of a portion of the preliminary hearing transcript to his federal petition for a writ of habeas corpus.

10

he would have insisted on a trial but for counsel's failure to secure Ms. Meier's presence for his pretrial motion *in limine*. Accordingly, Claim 3(A)(i) is DISMISSED.

## B. Ineffective Assistance of Appellate Counsel – Claims 4(A) and 4(B)

In Claim 4(A), Petitioner argues that appellate counsel was ineffective for failing to challenge Ms. Meier's identification testimony. As explained *supra*, her testimony did not violate his constitutional rights; Petitioner therefore cannot demonstrate that counsel prejudiced his case. Accordingly, Claim 4(A) is DISMISSED.

In Claim 4(B), Petitioner argues that appellate counsel was ineffective for failing to pursue a claim that his seizure and warrantless arrest violated the Fourth Amendment. Appellate "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (alteration in original) (*quoting Jones v. Barnes*, 463 U.S. 745, 752 (1983)). Additionally, counsel is presumed to have selected the issues that were most likely to afford appellate relief. *Id.* (*citing Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* at 164 (*quoting Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

An officer may arrest an individual without a warrant in a public place if he has probable cause. *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (citations omitted). An officer has probable cause to arrest a suspect "when facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in

11

believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal quotation marks omitted). "[T]he question to be answered is whether an objectively reasonable police officer, placed in the circumstances, had a 'reasonable ground for belief of guilt' that was 'particularized with respect to the person to be searched or seized.'" *Humphries*, 372 F.3d at 657-58 (*quoting Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). All of the circumstances known to the officer at the time of the arrest are considered in order to determine whether there was probable cause. *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required. *Wong Sun v. United States*, 371 U.S. 471, 479 (1963).

The trial court rejected Petitioner's claims after a full suppression hearing. (*See generally* April 6, 2005 Hr'g Tr.) Detective Skebo explained that he believed he had probable cause to detain and arrest Petitioner because Petitioner's DNA was on the shirt the robber wore, and because photographs in his arrest file resembled ones taken during the robbery. (April 6, 2005 Hr'g Tr. 83.)[11] Moreover, he was aware that Petitioner was a suspect in several similar crimes. (April 6, 2005 Hr'g Tr. 66-68.) Under the circumstances, Detective Skebo had probable cause to arrest Petitioner for bank robbery. *See United States v. Speed*, 272 F. App'x 88, 91 (2d. Cir. 2008) (No. 06-2649-cr.), *available at* 2008 WL 925283, at *2. Because Petitioner does not show that this claim was stronger than the claims rejected on appeal, he fails to show that counsel's performance was deficient pursuant to *Strickland*. Claim 4(B) is therefore DENIED.

---

[11] Contrary to Petitioner's assertion, it was reasonable for Detective Skebo to conclude that he had probable cause to arrest Petitioner based on the technician's phone call, and without reviewing the written DNA test report or demanding a statistical analysis of its accuracy.

## V. CONCLUSION

In light of the foregoing, Respondent's motion to dismiss, (Docket No. 4), will be GRANTED. The petition for a writ of habeas corpus will be DENIED, and the action will be DISMISSED.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

Date: 9-23-08
Richmond, Virginia